19-3637 from the Eastern District of Missouri, Jeffrey McMahon versus Robert Bosch Tool at all. Good morning. Mr. Fung? Yes. Please proceed. May it please the court. The plaintiff's complaint submits to the jury for determination whether the Roto-Zip RV-20 at issue in this case is effective. The auxiliary handle detached involuntarily and while the saw remained under power. The bulk of respondents arguments in this court and in the district court amount to straw men and red herrings. This is not a case about a lawn chair. It's not a case about a magic bullet type car accident scenario with three different impacts. This is a handheld spiral saw with a plaintiff hired Phil Buckley, a mechanical engineer with 50 years of experience, including experience designing and building handheld power tools. Yes, those were for commercial and industrial applications, but it seems like the respondent would accept no expert except one who worked on the particular saw during its own research and development phase. Well, let's issues with Mr. Buckley's qualifications to give expert testimony in this case. He acknowledged that visible wear on the receptacle shelf with a mere 20 installations of the auxiliary handle in a lab setting. He stated the handle release button would be in the thumb grip zone for a left-handed person, and he agreed that the auxiliary handle can detach when someone presses the handle release button on the tool with a warm receptacle shelf, making it a single action system. Respondent asserts that there are many types of expert witnesses out there, and that's true. Respondent wants to see a material sciences expert in this case, and I agree that would probably make it a little better. But to say that a mechanical engineer with 50 years of experience in handheld power tools would not help the jury is absurd. Well, counsel, why don't you tell us what the error was on the part of the court for not permitting your expert? Well, he could have, not permitting the expert, he should have, Mr. Buckley could have survived a bear motion and been able to see things within his expertise. For example, he should have been able to testify on the hierarchy of design, which would have allowed, which would have been about the eliminating the screw-on handle system that Bosch did to make this quick release type system, and how the hierarchy design requires you to put safety above convenience in these types of things. He should have been able to testify the difference between a single action system, which is accident prone, because when you're one action, and the difference between that and a double action, which requires two hands to actually attach the handle so that it can never be done involuntarily. He should have been able to testify on many other mechanical engineering type things in this case. A mere month after he was assigned to the case, Judge Clark adopted Respondent's ideas wholesale, struck the mechanical engineers having no value to the jury whatsoever, involving the power tool and merely dismissed the case. What about the conclusion by the district court that the expert's testimony or opinion was just contrary to what the plaintiff's version of what happened was? As I understand it, your client said, I inspected this device and there were no problems with it, or I wouldn't have used it, and the expert, I thought, gave the opinion that the damage was due to sort of long-term wear and tear. Wasn't that part of the district court's decision in excluding your expert? That was part of the district court's decision, and that is one of the problems. The plaintiff did not testify that there was no issue. He testified that he didn't see an issue, and when you look at the actual drawings that Mr. Buckley submitted of the worn receptacle shelf, it's a mere micrometer's difference in this receptacle shelf would be difficult for somebody to see and realize and the district court did a lot of taking what the respondent interpreted as facts over what the actual facts are, and that is one of them. Another one of them is that there was no, or that the plaintiff stated that he didn't touch the handle release button, and that's not what he said. He said he could have touched it. He didn't knowingly or intentionally touch it. Counsel, before you proceed, someone's shuffling papers. If you're shuffling papers and making noise, please mute your mic and not provide distraction to the proceeding. Thank you. So, that's a lot of the problem, Your Honor, and Dunn teaches that the district court abuses its discretion when it fails to consider a relevant factor that should have been given significant weight to an irrelevant or improper factor or considers only proper factors but commits clear error of judgment in weighing those factors, and those are two perfect examples of the judge taking what respondent says as gospel when that's not what the facts actually are. That's not what the testimony actually is, and furthermore, the case of the Loudon case. Well, counsel, the court's entitled to believe who they choose to believe or credit who they choose to credit, but what you need to, I think, show is how that the court used some improper means or used some improper judgment in making the choice that seems to line up with your opponent as opposed to simply being wrong because it's consistent with an opposing opinion. Well, the facts are the facts. The opinions are opinions, Your Honor, but one of the ways, as I just stated, the district court abuses discretion is if it fails to consider a relevant factor that should have been given significant weight, and that relevant factor is the alternative design of the roto-zip that Mr. Buckley brought into his deposition and put in his report that had this screw-on handle. The court stated that there was no alternative designs by Mr. Buckley when, in fact, this wasn't even this wasn't a computer model. This was an actual working specimen manufactured by Respondent, as a matter of fact, put into the stream of commerce and purchased that had this screw-on design of a handle that, you know, we've all known and grown up with these chucks that you use to screw and design away that safety feature for this quick release type system. There's no need for two added seconds of convenience of finding the mechanism and unscrewing the handle here when it makes it into a failure prone system as Mr. Buckley put in his opinion. Judge Clark also stated that Mr. Buckley failed to rule out kickback in his opinion. Now, first of all, there's absolutely no evidence of kickback at all whatsoever in the case. It's just made up by, but he fails to recognize, it fails to even acknowledge that Mr. Buckley measured the eccentricity of the spinning blade on this thing, which is part of definition of kickback in Respondent's motions, and he cut wood and found no kickback, and it also fails to acknowledge the plaintiff's own testimony that, and the plaintiff was there, his face was inches away from this tool when it happened. He had hands on it, his attention was on it, and he testified that kickback was not an issue. He was simply sawing, and the tool fell, leaving the auxiliary, holding the auxiliary handle in one hand, and Hickerson shows us that you can use the testimony. I mean, Hickerson, they overruled the, or overturned the striking of an expert. It says that, so it says that you need to take into consideration the plaintiff's ruling out alternative theories, especially alternative theories that just come out of the ether like this one, and furthermore, and so that again goes with the district court failed to consider a relevant factor that should have been given significant weight, making it abuse of discretion. Furthermore, and that goes towards the court saying that there was no testing in this to come off inadvertently with a single action process tracking plaintiff's complaint, but the respondent's expert agreed with that, and for some reason, the court and respondent would have you think that agreeing on this major issue in the complaint makes Buckley less useful to the jury, and somehow that makes the case weaker, when in fact it makes the case stronger, it makes Mr. Buckley's testimony better. Mr. Funk, you're within your rebuttal time. You can continue if you like, or you can reserve. I'm just, I got off track there a second. Let me, so this idea that respondent intentionally designed away a safety feature, the screw on handle method that Mr. Buckley brought in and put as part of his report and was completely ignored by Judge Clark is what, for just two seconds of convenience, is what brings me to the summary judgment portion of the matter. I think Mr. Buckley should be an expert and allowed to testify in this case, but in the event that he shouldn't be, Missouri does not require a law, or does not require an expert to submit to a jury that a handle on a handheld circular saw should not detach involuntarily and while the saw remains under power. The respondent gets so bogged down in hyper-focusing on material sciences and the receptacle shelf perspective, we don't need a receptacle shelf made of cheap plastic that saves us two seconds of time. We need the saw to be safe. We need the auxiliary handle not to come off involuntarily while the saw remains under power. We need the screw, or if for some reason they don't like the screw method, something else that's going to keep the auxiliary handle on. So that brings us to the Dunn case. First of all, the Dunn case is not Missouri law and the standard on summary judgment should be governed by Missouri law. Dunn cites to no Missouri law in this proposition. It only cites this case Willard v. Bick. In that case, Willard v. Bick, that cites to no Missouri law for this idea and that's just a district court case and that's the entire line of cases on this theory. When there's considerable case law in Missouri and on Missouri law that I cited, that is clear that this case could proceed without an expert. The arguments that respondent uses in Dunn come exclusively from dicta, but if there's any authority in Dunn that respondent cites to, it's distinguishable because just as the whole purpose of a lighter is to produce flame, the whole purpose of a spiral saw is to cut things for construction. The whole purpose of the spiral saw is not to come apart involuntarily while it remains under power. Just because Bosch intended this quick release feature does not mean the saw's whole purpose is to come apart involuntarily. If you look in the Higgerson case, which goes through this issue of res ipsa type theories and surviving summary judgment without an expert on defective liability case, they actually go through and cite a bunch of Missouri law, but they also cite a case, Lindsay v. McDonnell Douglas, where a fighter jet spontaneously exploded. Now the whole purpose of a fighter jet is to fly, even though it is designed to have multiple explosions in its combustion engine every second, the whole purpose of it isn't to explode. Just like the spiral saw's purpose is to cut things, not to come apart involuntarily while it remains under power. So if Bick and Willard decided to design away a safety feature of a lighter so a child was burned while no one was watching, that case would be allowed to proceed without an expert. If the wheelchair in Higgerson was designed with a car type cigarette lighter or something like that for convenience on it, the result in that case would be the same. If any of these cases were brought in Missouri State Court, they would all see a jury. In this case, it's further differentiated because we have the testimony and admissions of Dominey that the receptacle shelf exhibits visible, is made of material that exhibits visible wear and only 20 installations of the handle. The handle release button is in the thumb grip position of a person, a left-handed person, McMahon is left-handed, and the handle can involuntarily detach from the body. You've exhausted your time. Thank you, Your Honor. Okay. Mr. Kleider? May it please the court, my name is Patrick Kleider and I represent the Appalese Robert Bosch Tool Corporation and Lowe's Home Centers LLC. This morning, Your Honors, I ask that you affirm the district court's opinion to exclude plaintiff's expert, Phil Buckley, and to affirm the district court's opinion to grant summary judgment in favor of my clients and against the plaintiff for the following two reasons. First, the district court did not abuse its discretion in excluding Philip Buckley's testimony. And second, regardless of whether or not the district court abused its discretion, summary judgment is appropriate. Mr. Kleider, do you have a camera? Yes, Chief Judge Smith. Okay. Is your camera on? At least I don't have your image. I can see all of you. I have on my screen, Chief. Okay, well then it's just me. I'll try the trick of pinning and unpinning. Okay. Thank you, Chief Judge Smith. And I also apologize for the noise earlier. With respect to my first point here that the district court did not abuse its discretion excluding the testimony of Phil Buckley, I need to explain two quick points that help me illustrate why there was no abuse of discretion here. One is a product liability theory, and the second is regarding this tool. With respect to the claims in this case, there needs to be some defective condition that allowed this handle to come off and proximately cause the injuries to the plaintiff. With respect to the tool itself, an important consideration here is that this tool is designed to have an auxiliary handle that detaches. Not all uses of this tool require the auxiliary handle to be present. A user can slide the lock pin, depress the handle release button, and take the handle off, or they can put it back on. So the handle can come off as intended. The handle could come off theoretically because there's a breakage to the tool, or the tool's broken, or it might come off because there's some defective condition that proximately caused the accident. That's what the district court focused on, that third point, and that's where we need Mr. Buckley in this case. The district court correctly pointed out that this case is not a simple tool. It's complex. There are multiple things going on here. There are forces imparted upon the various surfaces. There are material science issues. There are issues of how the tool is being used. An expert is necessary. As I just pointed out, the handle could come off in three scenarios. A broken tool, because the user intends, and because of some defective condition. The jury needs an expert to help guide them to that third position, if you're the plaintiff, to prove their case. Without that, how do they get there? Expert testimony is required here, and the next question is, okay, what is the defect theory? If we look at Mr. Buckley's report and his testimony, he posits that the surface of the you could just press the button, and it comes off without sliding the extra lock pin. Just one motion, the handle comes off. That's what the defect theory that's been advanced here is. Whether or not he gets to go before the jury and provide that theory is the question that the district court looked at, and the district court determined that that theory was not reliable. The district court, in reaching that opinion, also recognized that Rule 702 is a flexible standard, that it liberalizes the emission of expert testimony, but it is still necessary for the district court to exercise its gatekeeping function, and that's exactly what the district court did here. The district court asked whether or not that defect theory was reliable. That's the issue under Rule 702 for this case. Was that opinion reliable? And with respect to reliability, there's not an exhaustive list of factors, but two important ones that the district court spent a lot of time looking at are testing and ruling out alternative theories. Now with respect to testing, the plaintiffs here haven't taken really the position that there need not be any testing, but the district court recognized, and making sure it wasn't abusing its discretion, the district court recognized that testing is not always required. It's not always required when the expert has certain experience that allows the expert to draw conclusions when that experience is reliable, but the district court pointed out why Mr. Buckley doesn't have that experience in this case. He's not worked for a power—and I just want to be clear, I am not taking the position that he's unqualified overall, wholesale. That is not our position. Our position is that he doesn't have the requisite experience to be excused from testing his defect theory, and the district court walked us through why that is. He's not done any testing on power tools. He doesn't know the applicable industry standard for this tool. He doesn't know if plaintiff was using the correct tool for the job. He's not done—he needs the test. He needs the test because of all that. He doesn't have the requisite experience. Now, has he tested? Well, the plaintiff in this case, the appellant, says, well, yeah, he has tested, but what has he done? It's not enough to get before a jury and say, I've checked the testing box under Daubert, and now I get to go before the jury. He needs to do some testing to prove the point, prove the defect theory, make it a reliable theory. And what has he done? He's taken a broken tool. There's no dispute that the tool is broken after the accident, and he's pressed the handle release button, and the tool detaches from the handle on a broken tool. But Mr. McMahon, the plaintiff in this case, he testified that it wasn't broken. So how does the handle come off? Was there wear? Was it susceptible to wear? Where's the testing to show that this tool was susceptible to wear? My clients can't just come up and put products in the market without doing anything. We've done testing, multiple testing. We did handle insertion tests. We did a drop test. We did a pull test. All these things are on the record. But Mr. Buckley's done none of that. He's just done something to prove an undisputed fact, and that's not enough to get him before the jury on his defect theory. I also want to point out alternative causes. Now, I'm not talking about some strange cause that is random that nobody can talk about here or think about. That's not what I'm saying. The manual for this tool points out that kickback is a known, or kickback or recoil, is a known phenomenon. Now, I don't know all of your backgrounds and if you've ever used a circular saw or any kind of power tool, but when there's a spinning blade, kickback is something that can occur. It's an obvious alternative cause. He doesn't have to rule out every cause, and the district court properly points that out, but the obvious ones he should look into. So kickback is a known possible alternative cause. How about woodcarving blades? What's the effect of using a woodcarving blade on this tool? The manual specifically says don't use a woodcarving blade. Mr. Buckley initially said that wasn't in the manual, but at his deposition he later corrected himself and said, oh yeah, that is in there. Use two hands on the tool. Counsel, is it known in this case exactly what the plaintiff was using in terms of the implement on the tool? Yes, Chief Judge Smith. He was using a woodcarving blade that was not one of our recommended accessories. Another problem with that wood is that it has a larger arbor hole, and the arbor is the shaft upon which the blade goes onto. It has a larger arbor hole than the arbor, so that's problematic. And again, I don't know everyone's backgrounds, but if you think about a pair of shoes, if you put on a pair of shoes that's about two or three sizes too big, your feet are going to kind of move around a little bit, and that's what happens with an arbor hole that is bigger than the shaft potentially. So that's another issue that could present a problem that could lead to kickback instability here. So I don't think Mr. Funk got to this part of his argument, but in his briefs he does point out that Mr. Buckley tested for kickback, but again, what was the testing? What was he really doing there? He tried to cut wood with the saw. He didn't actually experience a good kickback, but we know it's a given that kickback can occur. It's a known phenomenon. So if you do a test and don't experience the kickback, what are you really finding? You're not finding anything. You need to find what are the forces imparted on the tool when there is a kickback scenario. Can the user lose control? Can we see the type of damage that we see on this tool such that the damage was caused by the kickback due to all the things that the plaintiff was doing wrong as opposed to some defect? He's not done any of that type of testing, so he's not ruled out those alternative causes. In his deposition he talks about how to test kickback, but he didn't do that. He talks about knowing how to calculate the forces of dropping a tool. What happens if the plaintiff just dropped the tool? And that's how the damage occurred. He knows that that's something he could test for, but he didn't do that. And so he's not ruled out these alternative causes. And briefly, I want to touch on the fit issue with respect to whether or not his opinions fit the facts of this not pressing the button. I would take a close look at the plaintiff's testimony regarding that. At his deposition, he pondered when he was asked about whether he pressed the handle release button, whether he could physically stretch his thumb and touch that button. It wasn't whether, well I don't know if I touched it. At first he was wondering if it was a physical possibility. The follow-up question was whether he did that, and he said no. There wasn't this wishy-washy, I don't know, I might have, I could have, that's not in the record. It's simply not there. He was just saying whether it's a physical possibility, and then he clearly said that he did not do that. With respect to another, still on the district court's opinion to exclude Mr. Buckley, the other area that the district court addressed was the admissibility of alternative design opinions. Why are those important? Well, if Mr. Buckley's knocked out on his defect theory, maybe he can prove a defect that gets to the jury through alternative design evidence. An alternative design that made the product safer, such that the accident wouldn't occur, and that did not impinge on the utility of the tool. He's not done that here. He has, at his deposition, and I'm sorry, but you know, it's one thing when we talk about weight or error, admissibility, we can't even get to those kind of questions because at his deposition, he repeatedly testified that he wasn't offering things as alternative designs. Now, I applaud my adversary here because he has come up with various things that he is suggesting are alternative designs, but at his deposition, Mr. Buckley said he wasn't offering them as alternative designs because he wasn't instructed to create an alternative design or to prepare drawings or to prepare any type of alternative design or test or find other commercially available alternative designs because his attorney told him not to do that. Now, I want to talk about the screw handle for a little bit. Now, again, I know that Mr. Funk was not handling the lower court decision, but when we look at the record here on the handle, in the report, Mr. Buckley talks about the screw handle. He talks about it, but he also notes that there are utility issues with it. Why? Well, screws can be lost. Is the product now more dangerous because Mr. Buckley doesn't have, I'm sorry, Mr. McMahon doesn't have the screws and he can't even put the handle on and now he's just using it without the handle? Who knows? That is an address, but he admits in his own report that there are utility issues, so I suggest that it is not an alternative design. Furthermore, in his deposition, he testified that he used the tool, or I'm sorry, that he owned that tool. At his first deposition, he testified that he owned that screw-on handle and I think that was in the appendix of exhibits at page 193, 103 to 104 of his deposition. He owned that model and he was opposed a second time. My partner, Mr. Schweitzer, he got a chance to ask Mr. Buckley. He wanted to close the loop because we weren't yet disclosing our experts. If there was an alternative design, we want to test it. We want to explore it. We want to do the things that but we didn't have that chance. Why? Because when asked if, point blank, if he was offering any of those past designs, because this was an older design tool, if he was offering any of those past design tools as an alternative design, what does he say? I'm not. I'm not. He's not offering that as an alternative design. We can't come out on appeal now and suggest that things that the experts said are not alternative designs are alternative designs. I could go on and I won't. I think it's in the briefs but other things that are important to point out just briefly in terms of these other things, the dimensions of the latch. He says things such as he doesn't know why you would make latches those dimensions. Well, those are questions that jurors should ask, not experts. You don't know why they're that way? Well, what way should they be? He doesn't tell us in terms of materials. He doesn't offer an alternative material property that we should have as an alternative design. But when pressed at his deposition, he says it could be peak. He doesn't know why it's metal. Again, he's asking the questions that should be in the juror's mind. His job is to help the trier of fact through reliable, admissible expert testimony. And he's not doing that. So, and then briefly, I want the warnings. He's not provided any alternative warnings in this case. And in fact, that's not surprising because he has no issues with the manual. He testifies in appendix of exhibits, page 163, that he has no opinion that the manual is deficient. So the district court did not abuse its discretion in excluding his design defect theory or his alternative design testimony. There is no abuse of discretion there whatsoever. And when the appellant was answering that question on that point, wanting Mr. Buckley to testify is not air. There needs to be some abuse of discretion and it has not been set forth here. The district court did an exemplary job of going through all the factors, applying them, and explaining why Mr. Buckley should not testify. Again, and with respect to the summary judgment, regardless of whether Mr. Buckley's in the case, summary judgment is appropriate. I'd also suggest that the residence of claim has been waived because it wasn't brought forth in the lower court. Additionally, some of the cases regarding the wheelchair and things, they deal with things spontaneously combusting. This is an old tool. It's not a new tool. It's been around for 10 years. And so it's not a case where we can simply infer existence of a defect. So for these reasons, your honors, I ask respectfully that you affirm the decision of the district court. Thank you. Thank you, Mr. Clyder. Mr. Funk, you exhausted your entire time on your opening. So there's no time remaining for rebuttal. Court wishes to thank both counsel for your presence before us today in providing argument. And we have the briefing which you've submitted and we'll take the case under advisement. Counsel may be excused.